IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LARRY CARLSON and | ) | 8:08CV324 |
| LESLIE BERRY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| SUNSET FINANCIAL SERVICES, INC., | ) | |
| KANSAS CITY LIFE INSURANCE | ) | |
| COMPANY, and BRYAN S. | ) | |
| BEHRENS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion to Dismiss the Amended Complaint (Filing No. 86) submitted by Defendant Kansas City Life Insurance Company ("KC Life"). Also before the Court is Plaintiffs Larry Carlson and Leslie Berry's Request for Leave to Amend as to Defendant Kansas City Life Insurance Co. if the Court Grants Kansas City Life's Motion to Dismiss (Filing No. 95). The issues have been fully briefed.

## BACKGROUND

For purposes of the pending motion to dismiss, this Court accepts as true the factual allegations in the Amended Complaint (Filing No. 60), although the Court is not bound to accept Plaintiffs' legal conclusions. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007).

The Plaintiffs Larry Carlson and Leslie Berry  are citizens of the State of Nebraska. (Amended Complaint, Filing No. 60, ¶¶ 4, 5).   Defendant KC Life, a Missouri corporation with its principal place of business in Missouri, is licensed with the Nebraska Department of Insurance.  (*Id.* at ¶ 7).   Sunset Financial Services, Inc. ("Sunset"), a Washington corporation with its principal place of business in Missouri, is a wholly-owned subsidiary of

KC Life.[1]   (*Id.* at ¶ 6).   Sunset is a broker-dealer registered with the Securities and

Exchange Commission ("SEC") and is authorized to conduct business in Nebraska.   (*Id.*).

Defendant Bryan S. Behrens ("Behrens") was a citizen of the State of Nebraska at the time

the original Complaint was filed.   (*Id.* at ¶ 8).   He was an agent of KC Life and a registered

representative of Sunset.   (*Id.*).   Behrens was also the President and CEO of 21st Century

Financial Group, Inc. ("21st Century"), which operated as a branch office of Sunset.   (*Id.*).

Plaintiffs allege that Larry Carlson invested $180,000 on May 11, 2007, and

$210,376.29 on July 28, 2003, with Behrens through National Investments, Inc. ("National

Investments"), an entity controlled by Behrens and incorporated under the laws of Nevada.[2]

(*Id.* at ¶¶ 4, 13, 14).   Plaintiffs further allege that Leslie Berry invested $400,000 on July 25,

2007, $629,133.52 on January 20, 2006, $87,000 on September 20, 2004, $175,499.95

on July 28, 2003, and $179,362.01 on April 25, 2002, with Behrens through National

Investments. (*Id.* at ¶¶ 5, 14).   The written promissory notes were signed by Behrens on

behalf of the borrower, National Investments. [3]   (*Id.* at ¶¶ 14, 15).   According to Plaintiffs,

---

[1]Specific allegations with respect to Sunset were previously addressed in this Court's Memorandum and Order granting Sunset's Motion to Dismiss (Filing No. 88); however, as many of those allegations are intertwined with those against KC Life, they have been included herein.

[2]According to Plaintiffs, the corporate charter of National Investments was revoked by the Nevada Secretary of State on December 1, 2006.  (Amended Complaint, Filing No. 60, ¶ 13).

[3]The Court previously took judicial notice of the promissory notes attached to Sunset's Request for Judicial Notice and found at Filing No. 31-3, finding that the notes were embraced by the Amended Complaint and properly part of the Rule 12 record. (Filing No. 88).  KC Life references Sunset's request for judicial notice in its Motion to Dismiss (Filing No. 86).  Judicial notice of the promissory notes shall be extended to consideration of the Rule 12 record with respect to KC Life's Motion to Dismiss.

no written offering documents were prepared and Behrens made only oral representations to Plaintiffs about how the money would be invested. (*Id.* at ¶ 15). Behrens allegedly told Plaintiffs that he would make safe investments with the money that would result in a steady stream of income for Plaintiffs. (*Id.* at ¶ 16).

Plaintiffs allege that Behrens did not invest Plaintiffs' money but instead perpetrated a fraudulent Ponzi scheme.[4] (*Id.* at ¶¶ 13, 17). According to Plaintiffs, Behrens "misappropriated the funds for his personal use, spent the money in other ways, or simply transferred money among the Plaintiffs and other investors to prevent them from discovering the fraud."[5] (*Id.* at ¶ 17). Plaintiffs first became aware of the allegations of fraud against Behrens when the SEC filed a lawsuit in this Court against Behrens in January of 2008.[6] (*Id.* at ¶ 19). Even after the SEC filing, Behrens continued to reassure Plaintiffs that the allegations against him were false. (*Id.*). Plaintiffs contend that they would not have invested with Behrens had they known "the truth about Behrens's scheme." (*Id.* at ¶ 18).

---

[4]A Ponzi scheme is a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments." Black's Law Dictionary 1198 (8th ed. 2004). No "operation or revenue-producing activity other than the continual raising of new funds" is involved. *Id.* The scheme is named for Charles Ponzi, who was convicted in the late 1920s for the fraudulent schemes he perpetrated in Boston. *Id.*

[5]Plaintiffs allegedly received payments from Behrens or his companies in an unidentified amount. (*Id.* at ¶¶ 4, 5).

[6]Securities and Exchange Commission v. Bryan S. Behrens and National Investments, Inc., United States District Court for the District of Nebraska, Case No. 8:08cv13.

According to Plaintiffs, KC Life is authorized by the Nebraska Department of Insurance to offer "sickness and accident insurance, life insurance, variable life insurance, and variable annuities." (*Id.* at ¶ 7).  KC Life offers mutual funds and additional investment options through its subsidiary, Sunset.  (*Id.*).  Sunset is marketed by KC Life as a "trusted financial advisory firm" and both asserts that their agents and representatives "can be trusted in matters involving financial advice."  (*Id.* at ¶¶ 21, 22).  Plaintiffs contend that Sunset had a duty to supervise its registered representative, Behrens, and that by violating that duty to supervise, it failed to prevent the fraud perpetrated by Behrens.  (*Id.* at ¶ 23).  According to Plaintiffs, "Sunset [as a broker-dealer] was on notice from the SEC to monitor registered representatives for a common type of fraud that the SEC calls 'promissory note fraud.'" (*Id.* at ¶ 24).  Plaintiffs further allege that similar allegations against other registered representatives of Sunset put the corporation on "special" notice of this type of fraud.  (*Id.* at ¶ 25).  Plaintiffs contend that Behrens would not have been able to perpetrate his fraudulent scheme if he had been properly supervised by Sunset and KC Life and that Sunset and KC Life ignored "numerous red flags that were or should have been apparent to it [sic], including that Behrens was having the Plaintiffs and other investors pay penalties for early withdrawal from annuities or similar investments to move funds from Kansas City Life and other companies to invest with Behrens and National Investments."  (*Id.* at ¶ 26).

Finally, Plaintiffs allege that Sunset was aware that KC Life named Behrens a General Agent and recognized Behrens and 21st Century with various awards and appointments.  (*Id.* at ¶¶ 27-29).  Plaintiffs further allege that the awards bestowed upon Behrens "expressly and implicitly suggested that Behrens was trustworthy and that he was acting with the authority, consent, and approval of [KC Life] and its affiliates and

subsidiaries" and that KC Life "published these awards throughout the company as well as for consumption by the general public."  (*Id.* at 28).   Plaintiffs contend that Sunset was aware that the association between Behrens, KC Life, and itself gave Behrens an "aura of authority and trustworthiness" and gave him credibility that he would not otherwise have enjoyed.  (*Id.* at ¶ 30).   Plaintiffs maintain that the "aura of credibility was important in permitting Behrens to defraud the Plaintiffs."  (*Id.*).

The Amended Complaint contains ten Causes of Action.  The First Cause of Action alleges that Plaintiffs have been damaged by Behrens's violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  The Second and Third Causes of Action allege that Sunset and KC Life are liable for damages to Plaintiffs under § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), having had the power or ability to control Behrens.  The Fourth Cause of Action alleges common law fraud by Behrens.  The Fifth Cause of Action alleges breach of fiduciary duty by Behrens.  The Sixth and Seventh Causes of Action allege that Sunset and KC Life, as Behrens's principals, are jointly and severally liable for his common law fraud and breach of fiduciary duty.  The Eighth Cause of Action alleges that Behrens violated the Nebraska Securities Act.  The Ninth and Tenth Causes of Action allege that Sunset and KC Life are jointly and severally liable for Behrens's violations of the state securities act as alleged in the Eighth Cause of Action.

KC Life moves to dismiss Plaintiffs' action under Rule 12(b)(7) for failure to join necessary parties in accordance with Rule 19(a); under Rule 12(b)(6) for failure to state a claim upon which relief may be granted; and for failure to plead with the specificity required by Rule 9(b) and the Private Securities Litigation Reform Act.  (Filing No. 86).  KC Life also

seeks dismissal of the Amended Complaint on the basis of Plaintiffs' failure to seek leave

of the Court to file an action against Behrens in violation of the Court's judgment in the SEC

Action[7] against Behrens and National Investments, as well as Plaintiffs' failure to exhaust

their remedies in those proceedings.  This issue was addressed by the Court in a hearing

on the Receiver's motion to stay the proceedings as to Behrens and National Investments

held on March 18, 2009, in the SEC Action.  In granting the Receiver's motion to stay the

proceedings as to Behrens and National Investments, only, I indicated that I did not intend

to hold the parties pursuing personal actions against Behrens in contempt or to treat the

filings in this and other related cases as void ab initio.  (*See* Filing No. 89).  Therefore, no

further discussion of those matters is necessary.

## STANDARD OF REVIEW

For the reasons discussed below, KC Life's Motion to Dismiss will be resolved under

Fed. R. Civ. Pro. 12(b)(6), and KC Life's arguments under Fed. R. Civ. P. 12(b)(7), 19(a)

and 9(b) are, therefore, moot.  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

challenges the sufficiency of the factual allegations in the Amended Complaint.  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do . . . . " *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1965.

"Factual allegations must be enough to raise a right to relief above the speculative level."

*Id.*  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

---

[7]*See supra* note 6.

proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.*
(quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), abrogated on other grounds by
*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

With respect to Plaintiffs' claims under the Private Securities Litigation Reform Act
of 1995, as amended, 15 U.S.C. §78u-4 (the "PSLRA"), the Court acknowledges that the
PSLRA requires a modified approach to motions to dismiss based on its heightened
pleading requirements, *see Kushner v. Beverly Enter., Inc.*, 317 F.3d 820, 824 (8th Cir.
2003), and therefore, "'catch-all' or 'blanket' assertions that do not live up to the particularity
requirements of the [PSLRA]" will be disregarded.  *Id.* (citing *Florida State Bd. of Admin.
v. Green Tree Fin. Corp.,*  270 F.3d 645, 660 (8th Cir. 2001)).

## DISCUSSION

### KC Life's Motion to Dismiss

KC Life dedicates a large portion of its briefs to arguments that Plaintiffs' claims
against Behrens should fail and that failure of those claims leads to the logical conclusion
that Plaintiffs' claims against KC Life, based on secondary or vicarious liability, must fail as
a result.  In this Memorandum and Order I will address only those claims that pertain to KC
Life, specifically the Third, Seventh, and Tenth Causes of Action in the Amended
Complaint.

Third Cause of Action

Plaintiffs allege that KC Life is jointly and severally liable for the damages resulting
from Behrens's violation of the Securities Exchange Act as alleged in the First Cause of
Action.  Plaintiffs' Third Cause of Action is based on KC Life's alleged violation of § 20(a)

of the Securities Exchange Act found at 15 U.S.C. § 78t(a).  The statute says in relevant

part:

> Every person who, directly or indirectly, controls any person liable under any
> provision of this chapter or of any rule or regulation thereunder shall also be
> liable jointly and severally with and to the same extent as such controlled
> person to any person to whom such controlled person is liable, unless the
> controlling person acted in good faith and did not directly or indirectly induce
> the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

Plaintiffs allege that KC Life "directly or indirectly actually exercised control over

Behrens's general operations" and had the "ability, directly or indirectly, to exercise control

over the conduct by Behrens" underlying his alleged individual violation of the Securities

Exchange Act, thus creating liability for KC Life under § 20(a).  (Amended Complaint, Filing

No. 60, ¶¶ 42, 44).

Plaintiffs allege no facts supporting the conclusory statements that KC Life either

"exercised control" or "had the ability to exercise control" over Behrens or National

Investments with respect to the sale of the promissory notes at issue in this action.  There

are no allegations that KC Life was in any way involved in the transactions between

Plaintiffs and Behrens, acting on behalf of National Investments.  Nowhere on the face of

the notes themselves is KC Life mentioned.  Instead, the promissory notes identify National

Investments as the borrower.  (Filing No. 31-3).  There are no allegations that Behrens's

affiliation with KC Life played any part in the discussions between Behrens and Plaintiffs

on or around the time of the signing of the notes.  In fact, Plaintiffs allege that the

promissory notes sold by Behrens in perpetrating his fraudulent Ponzi scheme referred to

National Investments, an entity controlled by Behrens and which had no alleged connection

to KC Life.  (Amended Complaint, Filing No. 60, ¶¶ 13, 14).  Plaintiffs merely allege that Behrens, as President and CEO, "operated 21st Century as a branch office of Sunset," which in turn, is a wholly-owned subsidiary of KC Life. (*Id.* at ¶¶ 6, 8).

In their brief in opposition to the motion to dismiss, Plaintiffs argue that their allegations of controlling person liability against KC Life under the federal securities laws are sufficient to sustain KC Life's Rule 12(b)(6) challenge.  Plaintiffs rely heavily on the Eighth Circuit decision in *Martin v. Shearson Lehman Hutton, Inc.*, 986 F.2d 242 (8th Cir. 1993).  In *Martin*, a investment broker for the securities firm of Shearson Lehman Hutton, Inc., ("Shearson"), advised the plaintiff to purchase a particular stock, touting it to be a safe investment with secure dividend and repurchase guarantee.  The broker made these representations to the plaintiff, despite the fact that she had been instructed by Shearson's management to stop recommending that particular stock, and she further directed the plaintiff to purchase the stock through another brokerage house, the broker's future employer.  The "guaranteed" re-purchaser of the stock subsequently filed for bankruptcy; payment of the "secure" dividends ceased; and the stock became worthless.  *Id.* at 244. The plaintiff brought suit against Shearson alleging violations of federal securities laws, in addition to state law claims.  The Eighth Circuit held that the investment broker's "solicitation of the business while she was an employee of Shearson is sufficient to make out a prima facie case of controlling person liability" against Shearson.  *Id.*  "Shearson's agent solicited the purchase of the stock and misrepresented its nature.  Shearson had the ability to discipline [the investment broker's] conduct, and it was this conduct that gave rise to the loss."  *Id.*

Plaintiffs' argument is based on their allegations of Behrens's status as a registered representative of Sunset, and Sunset's status as a wholly-owned subsidiary of KC Life. Plaintiffs contend that under the Eighth Circuit's broad interpretation of Section 20(a) controlling person liability[8], they have established a prima facie case for KC Life's status as a "controlling person" over Behrens under the statute and that the burden now shifts to KC Life to establish a good faith defense. (Brief in Opposition, Filing No. 78, p. 8).  I disagree.  This Court previously held that Plaintiffs failed to establish a prima facie case of controlling person liability against Sunset.  (*See* Filing No. 88).  Thus, Plaintiffs' attempt to establish liability through KC Life's relationship to Sunset necessarily fails.  Moreover, on its own, KC Life's  relationship to Behrens is not analogous to Shearson's relationship to its investment broker in *Martin*.  Behrens was an agent of KC Life and as such was authorized to sell a product line limited by the Nebraska Department of Insurance, that excluded securities.  Behrens's authority to sell KC Life products is unrelated the allegations of securities fraud, and the relationship between Behrens and KC Life is too attenuated to hold KC Life liable for Behrens' alleged securities violations.

Plaintiffs' Amended Complaint fails to state a claim of controlling person liability against KC Life under Section 20(a) of the Securities Exchange Act.  As such, their Third Cause of Action will be dismissed for failure to state a claim upon which relief can be granted.

---

[8]Other circuits have taken a more restrictive view of controlling person liability by requiring a showing of "culpable participation" or "actual participation" to establish a person or entity as a controlling person under § 20(a).  *See Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 889-90 (3d Cir. 1975); *Gordon v. Burr*, 506 F.2d 1080, 1085-86 (2d Cir. 1974); *Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992).

Seventh Cause of Action

Plaintiffs allege that as Behrens's principal, KC Life is jointly and severally liable for the conduct that supports the allegations of fraud and breach of fiduciary duty against Behrens.  Plaintiffs contend that KC Life's liability for Behrens's conduct exists under the doctrine of respondeat superior.  (Amended Complaint, Filing No. 60, ¶ 62).  Plaintiffs also allege that Sunset is liable for Behrens's conduct "because of the apparent authority that it had bestowed upon Behrens."  (*Id.* at ¶ 63).

The Nebraska Supreme Court in *Strong v. K&K Inv., Inc.*, 343 N.W.2d 912 (Neb. 1984), provides a concise statement of Nebraska law concerning the doctrine of respondeat superior:

> [I]n order to sustain a recovery under the doctrine of respondeat superior, the relationship of master and servant must be shown to exist at the time of the injury and with respect to the particular transaction resulting in the alleged tort, and the servant must be shown to be acting within the scope of his employment . . . . [T]he conduct of a servant is within the scope of employment if, but only if, it is of a kind he is employed to perform, it occurred substantially within the authorized time and space limits, and it is actuated, at least in part, by a purpose to serve the master.

*Id.* at 915-916.

Plaintiffs' Amended Complaint contains no allegations that Behrens was employed by KC Life.  It is similarly devoid of allegations that Behrens's conduct, that is, selling promissory notes to Plaintiffs on behalf of National Investments, was in any way related to his role as an agent of KC Life, for which he sold a limited line of products that did not include securities.  Plaintiffs do not allege that KC Life received any direct or indirect compensation as a result of the promissory note transactions or that Behrens led Plaintiffs to believe that KC Life had any involvement in or oversight of the transactions.  Finally, any

allegations that Plaintiffs relied on the broker-dealer relationship between Behrens and KC Life in deciding to invest their money with National Investments are notably absent from the Amended Complaint.

In defending their apparent-authority claim against KC Life, Plaintiffs rely on the ruling of the Nebraska Supreme Court in *Draemel v. Rufenacht, Bromagen & Hertz, Inc.*, 392 N.W.2d 759 (Neb. 1986). In *Draemel*, the plaintiff sued RB & H for alleged acts of conversion committed by their former agent, Gottsch. After his discharge, Gottsch continued to have access to the RB & H office and "continued to have use of the telephone, the direct line to the Chicago Mercantile Exchange, and the account cards and risk disclosure forms bearing the name of RB & H." *Id.* at 762. "Apparent or ostensible authority may be conferred if the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the apparent agency." *Id.* at 763. The Amended Complaint is devoid of allegations that KC Life caused Plaintiffs to act upon any "apparent agency." The court in *Draemel* also noted that "there is evidence that Draemel thought he was giving Gottsch the money as an agent of RB & H . . . ." *Id.* at 764.[9] Plaintiffs make no such allegations in the Amended Complaint. Thus, Plaintiffs' reliance on the ruling in *Draemel* is misplaced.

---

[9] In *Steunenberg v. National Progressive Life Ins. Co.,* 292 N.W. 737 (Neb. 1940), the Nebraska Supreme Court held that a life insurance company was not liable for the fraudulent conduct of it's vice-president, Lehman. The court recognized that "[a] principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." *Id.* at 743 (quoting 1 Restatement, Agency, sec. 261). "However, in the case at bar, Lehman did not hold out to plaintiff that she was transacting business with the Insurance company, . . . so the rule cited does not apply." *Id.* The allegations in Plaintiffs' Amended Complaint and the promissory notes similarly indicate that Behrens was transacting business by selling securities or promissory notes on the behalf of National Investments, an entity under his control and with no apparent connection to KC Life.

Plaintiffs' Amended Complaint fails to state a claim of respondeat superior liability or apparent authority against KC Life.  As such, Plaintiffs' Seventh Cause of Action will be dismissed for failure to state a claim upon which relief can be granted.

Tenth Cause of Action

Plaintiffs allege that KC Life is jointly and severally liable for damages caused by Behrens's violation of the Nebraska Securities Act found at Nebraska Revised Statutes § 8-1118(3) (Reissue 2007).  The Nebraska Act states in relevant part:

> Every person who directly or indirectly controls a person liable under subsections (1)[10] and (2)[11] of this section including . . . every broker-dealer . . . . who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Neb. Rev. Stat. § 8-1118(3) (Reissue 2007).

In the introductory paragraphs of the Amended Complaint, Plaintiffs allege that KC Life is a corporation licensed with the Nebraska Department of Insurance.  (Amended Complaint, Filing No. 60, ¶ 7).  With respect to the Tenth Cause of Action, Plaintiffs allege that KC Life "is liable because it directly or indirectly controlled Behrens and materially aided Behrens in his commission of the fraudulent conduct."  (*Id.* at ¶ 74).

---

[10]Neb. Rev. Stat. § 8-1118(1) provides in part:  "Any person who . . . offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know and in the exercise of reasonable care could not have known of the untruth or omission, shall be liable to the person buying the security from him or her . . . ."

[11]Neb. Rev. Stat. § 8-1118(2) provides in part: "[A]ny investment adviser who employs any device, scheme, or artifice to defraud such person [to whom the investment adviser provides investment adviser services] or engages in any act, practice, or course of business which operates or would operate as a fraud or deceit on such person shall be liable to such person."

The Eighth Circuit recently addressed the issue of the liability of a broker-dealer under a very similar provision of the Arkansas Securities Act.  In *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866 (8th Cir. 2008), the plaintiff investors brought an action against an investment services company, Merrill Lynch, for aiding and abetting an individual, David Howell, whom they alleged defaulted on promissory notes that were obtained through false representations.[12]  The Court affirmed the district court's dismissal of the plaintiffs' claims against the broker-dealer.  "It is not enough for the investors to allege Merrill Lynch was Howell's broker-dealer; they must also allege Merrill Lynch materially aided in the sale of the promissory notes. . . . Because the Complaint is devoid of any allegations which might establish Merrill Lynch materially aided Howell's sale of the promissory notes to the investors, the district court correctly concluded the investors failed to state a claim against the broker-dealer. . . ."  *Id.* at 870-71.[13]

_____

[12]Although Howell's sale of promissory notes preceded his affiliation with Merrill Lynch, the reasoning of the Court in this case, with respect to allegations of aiding and abetting, may still be applied to the facts of the case before this Court.

[13]Plaintiffs cite a district court case from the Sixth Circuit, *As You Sow v. AIG Financial Advisors, Inc.*, 584 F. Supp. 2d 1034 (M.D. Tenn. 2008), in support of his argument that KC Life's "permitting Behrens to be registered as associated with Sunset constituted material aid to Behrens in committing a fraud." (Plaintiff's Brief, Filing No. 94, p. 11).  In *As You Sow*, the plaintiffs alleged that the defendants, AIG and Spelman & Co., were liable under the Tennessee Securities Act for "negligent and grossly negligent supervision and fraud" with respect to the misappropriation of funds by their agents, Stokes and his 1 Point Solutions, LLC, company.  *As You Sow,* 584 F. Supp. 2d at 1036.  The court held that AIG and Spelman were controlling persons based on their indirect control over Stokes because "Stokes could not sell [the fictitious] securities without the Defendants' designation of him as their registered agent."  *Id.* at 1045.  The court further noted that "[p]laintiffs also allege that the Defendants were aware that Stokes was doing business through 1 Point Solutions." *Id.* at 1037.  In the matter before this Court, the Amended Complaint makes no mention that KC Life was aware that Behrens was doing business as National Investments.  As such, I do not find the holding of the court in *As You Sow* persuasive in support of Plaintiffs' position.

14

Notably absent from the Amended Complaint in the present case are factual allegations supporting Plaintiffs' conclusory statement that KC Life controlled Behrens, either directly or indirectly.  The Amended Complaint is deviod of allegations that KC Life took any action that could be construed as aiding Behrens's sale of promissory notes to Plaintiffs.  There simply is nothing in the Amended Complaint alleging that KC Life was in any way involved in the transactions.

Plaintiffs' Amended Complaint fails to state a claim that KC Life is liable under the Nebraska Securities Act for having direct or indirect control over Behrens and materially aiding him in commission of his alleged fraudulent conduct.  As such, Plaintiffs' Tenth Cause of Action will be dismissed for failure to state a claim upon which relief can be granted.

**Plaintiff's Motion for Leave to Amend**

Plaintiffs request that the Court grant them leave to file a second amended complaint in the event that KC Life's motion to dismiss is granted.  Attached to their motion is a proposed second amended complaint (Filing No. 95-2).  Plaintiffs argue that the second amended complaint states a claim for which relief can be granted[14] so the amendment would not be futile with respect to all of its claims against KC Life.  Plaintiffs also argue that they are entitled to file a second amended complaint in the interest of justice.

---

[14]Plaintiffs qualify their argument by stating that claims contained in their Amended Complaint (Filing No. 60) are sufficient to withstand KC Life's Motion to Dismiss the Amended Complaint.  However, in the event that the Court finds otherwise, as it did in granting a similar motion filed by Sunset (Filing No. 88), Plaintiffs request leave of the Court to file a second amended complaint.

"Futility is a valid basis for denying leave to amend."  *United States ex rel. Henry Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009).  First, I note that the Court has previously recognized Plaintiffs' right to file an amended complaint.  (Filing No. 58).  I now find that Plaintiffs' proposed additional amendments do not cure the inadequacies in the Amended Complaint as identified and discussed by the Court above.  In their attempt to remedy the deficiencies, Plaintiffs merely offer additional allegations with respect to KC Life's relationship to Sunset in an attempt to make a prima facie case for control person liability.  The additional allegations and legal conclusions offered in the proposed second amended complaint fail to establish the necessary nexus between KC Life and Behrens's actions that underlie Plaintiffs' various theories of secondary liability.

## CONCLUSION

Plaintiffs' claims against KC Life under the various theories of secondary liability fail.  KC Life's Motion to Dismiss is granted on the basis of Federal Rule of Civil Procedure 12(b)(6) and the deficiencies in the Amended Complaint cannot be cured by the filing of the proposed second amended complaint.

Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss filed by Defendant Kansas City Life Insurance Company, (Filing No. 86) is granted, with respect to Plaintiffs' claims against KC Life only;

2. Plaintiffs Larry Carlson and Leslie Berry's claims against Kansas City Life Insurance Company, identified in the Amended Complaint as Counts III, VII, and X, are dismissed with prejudice; and

3.      Plaintiffs Larry Carlson and Leslie Berry's Motion for Leave to Amend as to

        Defendant Kansas City Life Insurance Co. if the Court Grants Kansas City

        Life's Motion to Dismiss (Filing No. 95) is denied.

DATED this 17th day of July, 2009.

                                BY THE COURT:


                                s/Laurie Smith Camp
                                United States District Judge